IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
2013 JUL 23  P 4: 44

**RESORT FUNDING LLC,**

    **Plaintiff,**

v.                                                                 Civil Action No. 3:13CV476

**RONALD L. HOLT,**
**JOHN L. HOLT, III,**
**and**
**DAVID P. SHIVELY,**

    **Defendants.**

## COMPLAINT

Plaintiff, Resort Funding LLC ("Resort Funding" or "Plaintiff"), by counsel, for its Complaint against Defendants, Ronald L. Holt, John L. Holt, III, and David P. Shively ("Defendants"), states as follows:

### NATURE OF THE ACTION

1. This is an action to enforce personal guaranties executed by Defendants related to two commercial loans on which Defendants have defaulted.

### THE PARTIES

2. Resort Funding is a Delaware limited liability company with three members: Merrill Lynch L.P. Holdings, Inc., Henson Capital, Inc., and Hamel Capital, Inc. Merrill Lynch L.P. Holdings, Inc. is a Delaware corporation with its principal place of business in New York, New York. Henson Capital, Inc. and Hamel Capital, Inc. are both Delaware corporations with their principal places of business in Syracuse, New York.

3. Upon information and belief, Defendants are, and were at all relevant times, citizens of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) in that the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue in this district and in this Court is proper under 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

### The Acquisition, Development and Construction Loan

6. On August 30, 2006, Resort Funding, as lender, and Land'Or Williamsburg LLC ("Williamsburg"), as borrower, executed the Acquisition, Development and Construction Loan Agreement (the "AD&C Agreement") relating to a loan for the acquisition of land and construction of buildings and other improvements for a time share project.

7. In conjunction with the AD&C Agreement, Williamsburg, as Maker, executed an Acquisition, Development and Construction Promissory Note (the "AD&C Note"), dated August 30, 2006, in the principal amount of $13,100,000. A true and correct copy of the AD&C Note is attached hereto as **Exhibit A**.

8. Williamsburg also executed a Deed of Trust, Assignment of Rents and Leases, Security Agreement, and Financing Statement (the "DOT"), dated August 30, 2006, under which Williamsburg granted Resort Funding a deed of trust lien on certain real property and improvements owned by Williamsburg (the "Property") as security for the AD&C Note.

9. Paragraph 5.1 of the AD&C Agreement defines an "Event of Default" to include when "[a]ny indebtedness evidenced, governed, or secured by any of the Loan Documents is not paid when due, whether by acceleration or otherwise."

2

10. Paragraph 1.42 of the AD&C Agreement defines the term "Loan Documents" to mean:

> [T]his Agreement, the Mortgage, the [AD&C Note], the Guaranty and Subordination Agreements, the Hypo Loan Agreement, the Hypo Note, the Environmental Indemnity Agreement and any and all other agreements, documents, instrument, and certificates delivered or contemplated to be delivered in connection with this Agreement, as the same may be amended, renewed, extended, restated or supplemented from time to time.

11. Pursuant to paragraph 6.1 of the AD&C Agreement, Resort Funding has the right, on the occurrence of an Event of Default, to declare the $13,100,000 loan from Resort Funding to Williamsburg immediately due and payable.

12. Moreover, under paragraph 6.1 of the AD&C Agreement, Resort Funding has the right, on the occurrence of an Event of Default, to enter into possession of the Property.

13. Pursuant to paragraph 5(b) of the AD&C Note,

> If any attorney is engaged: (i) to collect the Loan or any sums due under the Loan Documents, whether or not legal proceedings are thereafter instituted by Holder . . . [or] to foreclose on the Collateral . . . then Maker shall pay the Holder all reasonable costs, attorneys' fees and paralegals' fees, and expenses incurred in connection therewith, whether in or out of court or trial, any appeals therefrom, and any administrative, bankruptcy, arbitration or mediation proceedings in addition to all other amounts due under this Note.

14. To induce Resort Funding to enter into the AD&C Agreement and AD&C Note, each Defendant executed separate Guaranty and Subordination Agreements with Resort Funding, dated August 30, 2006 (collectively, the "AD&C Guaranties").

15. The AD&C Guaranties executed by Defendants are attached hereto as **Exhibit B**.

16. Paragraph 1(a) of the AD&C Guaranties states that "Guarantor hereby unconditionally guarantees to Lender: (a) The full, complete and punctual performance by [Williamsburg] of all the terms, covenant and conditions contained in the Documents

('Obligations') . . . ." The "Documents" is defined as the AD&C Agreement, the AD&C Note, and "all other agreements and documents called for thereunder."

17. Pursuant to paragraph 1(b) of the AD&C Guaranties, Defendants individually and unconditionally guaranteed to Resort Funding:

> The payment of all sums at any time owed by [Williamsburg] under the Documents as and when the same shall become due and payable, whether at maturity, by acceleration or otherwise, according to the Documents, and all losses, reasonable costs, reasonable expenses and reasonable attorneys' and paralegals' fees incurred, whether in or out of court or trial, any appeals therefrom, and any administrative, bankruptcy, arbitration or mediation proceedings, by reason of the occurrence of an Event of Default as defined under the Documents . . .

18. Paragraph 4 of the AD&C Guaranties further provides:

> Upon the occurrence of an Event of Default by [Williamsburg], [Resort Funding] may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of its liability hereunder, or any portion thereof, without proceeding against [Williamsburg], or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying any property, real or personal, which [Resort Funding] may then hold as security for such Indebtedness.

19. On June 14, 2011, Resort Funding declared Williamsburg and Defendants in default under the AD&C Agreement, AD&C Note, and the DOT by, among other things, failing to make payments due and owing under the AD&C Note. *See* **Exhibit C**.

20. Pursuant to the DOT, Resort Funding foreclosed on the Property and, on August 5, 2011, sold it at a public auction to the highest bidder at the price of $5,869,905.88. A true and correct copy of the Trustee's Deed evidencing the sale of the Property is attached as **Exhibit D**.

21. The proceeds from the sale of the Property did not satisfy the amounts due and owing under the AD&C Note.

22. To date, Defendants have refused and/or failed to pay the amounts due and owing under the AD&C Note and the AD&C Guaranties.

4

**The Hypothecation Loan Agreement and Promissory Note**

23.     On March 9, 2005, Resort Funding, as lender, and Williamsburg, as borrower, executed the Hypothecation Loan Agreement, by which Williamsburg borrowed funds for general operating purposes. The Hypothecation Loan Agreement, including all amendments and revisions thereto, is referred to as the "Hypo Loan Agreement."

24.     In conjunction with the Hypo Loan Agreement, Williamsburg, as Maker, executed a Hypothecation Promissory Note, dated March 9, 2005, in the principal amount of $20,000,000. The Hypothecation Promissory Note, including all amendments and revisions thereto, is referred to as the "Hypo Note." A true and correct copy of the Hypo Note is attached as **Exhibit E**.

25.     To induce Resort Funding to enter into the Hypo Loan Agreement and Hypo Note, Defendants Ronald and John Holt executed separate Guaranty and Subordination Agreements with Resort Funding, dated March 9, 2005 (the "Holt Hypo Guaranties"). True and correct copies of the Holt Hypo Guaranties are attached hereto as **Exhibit F**.

26.     Pursuant to the Holt Hypo Guaranties, Defendants Ronald and John Holt personally guaranteed all of the obligations and indebtedness of Williamsburg to Resort Funding under the Hypo Loan Agreement and Hypo Note.

27.     On August 30, 2006, Resort Funding and Williamsburg executed an Amended and Restated Hypothecation Loan Agreement ("Amended Hypo Loan Agreement") and an Amended and Restated Hypothecation Promissory Note ("Amended Hypo Note"). A true and correct copy of the Amended Hypo Note is attached as **Exhibit G**.

28. In conjunction with the Amended Hypo Loan Agreement and Amended Hypo Note, Defendant Shively executed a separate Guaranty and Subordination Agreement with Resort Funding, dated August 30, 2006 (the "Shively Hypo Guaranty," and collectively with the Holt Hypo Guaranties, the "Hypo Guaranties"). A true and correct copy of the Shively Hypo Guaranty is attached hereto as **Exhibit H**.

29. Pursuant to the Shively Hypo Guaranty, Defendant Shively personally guaranteed all of the obligations and indebtedness of Williamsburg to Resort Funding under the Hypo Loan Agreement and Hypo Note.

30. Also in conjunction with the Amended Hypo Agreement and Amended Hypo Note, Defendants Ronald and John Holt each executed a separate Ratification and Confirmation of Guaranty dated August 30, 2006 (the "Holt Ratifications"). The Holt Ratifications confirmed and ratified the Holts' personal and individual guarantees on the obligations and indebtedness of Williamsburg to Resort Funding under the Amended Hypo Loan Agreement and the Amended Hypo Note.

31. On May 29, 2007, Resort Funding and Williamsburg executed a Second Amended and Restated Hypothecation Loan Agreement ("Second Amended Hypo Agreement") and a Second Amended and Restated Hypothecation Promissory Note ("Second Amended Hypo Note"). A true and correct copy of the Second Amended Hypo Note is attached as **Exhibit I**.

32. In conjunction with the Second Amended Hypo Agreement and Second Amended Hypo Note, Defendants Ronald and John Holt each executed a separate Second Ratification and Confirmation of Guaranty, dated May 29, 2007, and Defendant David P. Shively executed a Ratification and Conformation Guaranty, dated May 29, 2007 (the "Defendants' Ratifications"). *See* **Exhibit J**. The Defendants' Ratifications confirmed and ratified their respective personal

6

guaranties of the obligations and indebtedness of Williamsburg to Resort Funding under the Second Amended Hypo Loan Agreement and the Second Amended Hypo Note.

33. Paragraph 9.0 of the Second Amended Hypo Agreement defines an "Event of Default" to include when "Borrower fails to make any payment of the Indebtedness when due."

34. Paragraph 2.34 of the Second Amended Hypo Agreement defines the term "Indebtedness" to mean "all payment obligations of Borrower to Lender under the Loan Documents."

35. Paragraph 2.40 of the Second Amended Hypo Agreement defines the term "Loan Documents" to mean:

> [T]his Agreement, the [Second Amended Hypo Note], the AD&C Note, the AD&C Loan Agreement, the Borrower's Mortgage, the Guaranty Agreements, the Environmental Indemnity Agreement and any and all other agreements, documents, instruments, and certificates delivered or contemplated to be delivered in connection with this Agreement, as the same may be amended, renewed, extended, restated or supplemented from time to time.

36. Pursuant to paragraph 10.0 of the Second Amended Hypo Agreement, Resort Funding has the right, on the occurrence of an Event of Default, to "[d]eclare the unpaid balance of the indebtedness, or any part thereof, immediately due and payable, at which point the same shall be due and payable."

37. Pursuant to paragraph 5(b) of the Second Amended Hypo Note,

> If any attorney is engaged: (i) to collect the Loan or any sums due under the Loan Documents, whether or not legal proceedings are thereafter instituted by Holder . . . [or] to foreclose on the Collateral . . . then Maker shall pay the Holder all reasonable costs, attorneys' fees and paralegals' fees, and expenses incurred in connection therewith, whether in or out of court or trial, any appeals therefrom, and any administrative, bankruptcy, arbitration or mediation proceedings in addition to all other amounts due under this Note.

38. Paragraph 1(a) of the Hypo Guaranties states that "Guarantor hereby unconditionally guarantees to Lender: (a) The full, complete and punctual performance by

7

[Williamsburg] of all the terms, covenant and conditions contained in the Documents ('Obligations') . . . ." "Documents" is defined as the Hypo Loan Agreement, the Hypo Note, and "all other agreements and documents called for thereunder."

39.     Pursuant to paragraph 1(b) of the Hypo Guaranties, Defendants individually and unconditionally guaranteed to Resort Funding:

> The payment of all sums at any time owed by [Williamsburg] under the Documents as and when the same shall become due and payable, whether at maturity, by acceleration or otherwise, according to the Documents, and all losses, reasonable costs, reasonable expenses and reasonable attorneys' and paralegals' fees incurred, whether in or out of court or trial, any appeals therefrom, and any administrative, bankruptcy, arbitration or mediation proceedings, by reason of the occurrence of an Event of Default as defined under the Documents . . .

40.     Paragraph 4 of the Hypo Guaranties further provides:

> Upon the occurrence of an Event of Default by [Williamsburg], [Resort Funding] may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of its liability hereunder, or any portion thereof, without proceeding against [Williamsburg], or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying any property, real or personal, which [Resort Funding] may then hold as security for such Indebtedness.

41.     On June 14, 2011, Resort Funding declared Williamsburg and Defendants in default under the Hypo Loan Agreement and Hypo Note by, among other things, failing to pay the amounts due and owing under the Hypo Note. *See* Ex. C.

42.     Pursuant to the Second Amended Hypo Agreement, Resort Funding foreclosed on the pertinent collateral securing the Second Amended Hypo Note and purchased such collateral for $14,500,000. A true and correct copy of the Bill of Sale in Disposition of Collateral relating to the purchase is attached as **Exhibit K**.

43.     The proceeds from the sale of such collateral did not satisfy the amounts due and owing under the Second Amended Hypo Note.

44. To date, Defendants have refused to pay the amounts due and owing under the Hypo Note and Hypo Guaranties.

## COUNT I
## (Breach of Contract – AD&C Guaranties)

45. Resort Funding re-alleges and incorporates by reference herein the allegations of all prior paragraphs of this Complaint.

46. The AD&C Agreement is a valid and enforceable contract.

47. The AD&C Note is a valid and enforceable contract.

48. The AD&C Guaranties are valid and enforceable contracts.

49. Williamsburg has breached the AD&C Agreement and AD&C Note by, among other things, failing to pay the amounts due and owing under the AD&C Note.

50. Williamsburg's nonpayment and failure to fulfill its obligations under the AD&C Agreement and AD&C Note constitutes an Event of Default under the AD&C Agreement.

51. Defendants are in default and have breached the AD&C Guaranties by failing to guaranty Williamsburg's full and complete performance of the AD&C Agreement and AD&C Note, including the payment of all sums due and owing under the AD&C Note.

52. As result of Defendants' default, Defendants are jointly and severally liable to Resort Funding for the amounts due and owing under the AD&C Note and the AD&C Guaranties, which, at present, equal at least $1,086,567.16.

## COUNT II
## (Breach of Contract – Hypo Guaranties)

53. Resort Funding re-alleges and incorporates by reference herein the allegations of all prior paragraphs of this Complaint.

54. The Hypo Loan Agreement, as subsequently amended, is a valid and enforceable contract.

55. The Hypo Note, as subsequently amended, is a valid and enforceable contract.

56. The Hypo Guaranties, as subsequently ratified and confirmed, are valid and enforceable contracts.

57. Williamsburg has breached the Hypo Loan Agreement and Hypo Note by, among other things, failing to pay the amounts due and owing under the Hypo Note.

58. Williamsburg's nonpayment and failure to fulfill its obligations under the Hypo Loan Agreement and Hypo Note constitutes an Event of Default under the Hypo Loan Agreement.

59. Defendants are in default and have breached the Hypo Guaranties, as subsequently ratified and confirmed, by failing to guaranty Williamsburg's full and complete performance of the Hypo Loan Agreement and Hypo Note, including the payment of all sums due and owing under the Hypo Note.

60. As result of Defendants' default, Defendants are jointly and severally liable to Resort Funding for the amounts due and owing under the Hypo Note and Hypo Guaranties, which, at present, equal at least $4,248,857.54.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Resort Funding LLC, respectfully prays that the Court enter an Order:

(a) entering judgment in favor of Resort Funding and against Defendants, jointly and severally, for the amounts due and owing under the AD&C Note and AD&C Guaranties, which

equal at least $1,086,567.16, plus costs, reasonable attorneys' fees, expenses, and pre-judgment interest;

(b) entering judgment in favor of Resort Funding and against Defendants, jointly and severally, for the amounts due and owing under the Hypo Note and Hypo Guaranties, as subsequently ratified and confirmed, which equal at least $4,248,857.54, plus costs, reasonable attorneys' fees, expenses, and pre-judgment interest; and

(c) such other and further relief as the Court shall deem necessary and proper.

**RESORT FUNDING, LLC**

By: *[signature]*
Michael E. Lacy
Virginia Bar No. 48477
H. Scott Kelly
Virginia Bar No. 80546
*Counsel for Resort Funding LLC*
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, Virginia 23218-1122
(804) 697-1350 (voice)
(804) 698-5172 (facsimile)
michael.lacy@troutmansanders.com
scott.kelly@troutmansanders.com

20493916v3